**RESEARCH FRONTIERS INCORPO-RATED, Plaintiff,**

v.

**MARKS POLARIZED CORPORATION,**
**Alvin M. Marks and Mortimer M.**
**Marks, Defendants,**

v.

**Robert SAXE, Morton Berger and Robert**
**Thompson, Counter-Defendants.**

**No. 67 Civ. 1149.**

United States District Court
E. D. New York.

Feb. 4, 1969.

See also, D.C., 290 F.Supp. 725.

Feldshuh & Frank, New York City, for plaintiff, by Richard Weinberger, New York City, of counsel.

Sandoe, Hopgood & Calimafde, New York City, for defendants, by John M. Calimafde, New York City, of counsel.

## INTERIM OPINION

JUDD, District Judge.

This is a motion for partial summary judgment by defendants, who granted limited exclusive licenses to plaintiff under two agreements, covering a large number of patents and patent applications.

Plaintiff's action seeks substantial damages from defendants for breach of the agreements, alleging infringement of certain of the patents and also charging that defendants prevented fruitful exploitation of the licenses in that they (a) failed to furnish the "know-how" which they undertook to provide, and (b) negotiated directly with other parties in connection with some of the licensed patents. Defendants' answer includes a counterclaim requesting a declaratory judgment that the agreements have been terminated by plaintiff's non-payment of minimum royalties, which have been withheld since the letter of November 17, 1967.

Defendants' motion now seeks in the alternative (1) a declaration that the license agreements are at end, or (2) judgment for past-due minimum royalties, which amount to $132,500. This amount is less than the damages claimed in the complaint. Defendants themselves point out that their counterclaim does not seek royalties, but only recognition of the termination of the contract. They argue nevertheless that plaintiff cannot claim the continuing benefit of the license agreements without paying current royalties.

Plaintiff filed a cross-motion for an order specifying that the license agreements have not been terminated.

On a previous motion by defendants to dismiss the case for lack of federal jurisdiction, the court held that plaintiff had pleaded a case under the Patent Law insofar as it alleged manufacture and sale of patented articles, and that the other allegations of the complaint were within the court's jurisdiction as pendent causes of action. 290 F.Supp. 725.

*Facts concerning alleged termination.*

Plaintiff protested to defendants about substantial failure of consideration, by a letter dated November 17, 1967, which recited defendants' alleged "breaches of the hearthstone obligation" to refrain from invading the licenses they had granted. This letter recited that these breaches constituted an excuse from making further royalty payments, but stated, "We expressly *decline* to deem those licenses terminated."

Defendants replied in a letter dated November 28, 1967 that "We accept your termination of the license agreements * * *" and accused plaintiff of ineffective promotion and unfounded inter-

ference in defendants' relationship with an important customer.

Plaintiff responded by letter dated December 12, 1967, asserting that it had not terminated the agreements.

Meanwhile, this action was begun on December 5, 1967. Defendants' original answer was served on January 22, 1968.

Plaintiff on January 23, 1968 demanded arbitration, pursuant to the provisions quoted below, and defendants on February 8, 1968 obtained an order to show cause from the Supreme Court, Queens County, for a stay of arbitration. A stay was granted on July 15, 1968, on the ground that the institution of this action was a waiver of the right to arbitrate. An appeal from that order is still pending.

The termination provisions of the two license agreements are identical, and read as follows:

"In the event of any substantial breach of this agreement by RESEARCH, A & M or MARKS, the other party, or parties at its option may terminate this Agreement on not less than sixty (60) days notice in writing to such breaching party of its intention to terminate on account of the breach designated, in detail, in such notice; and the license term shall terminate upon the expiration of such period unless the breaching party shall have cured the breach designated in such notice within such period or shall have notified the complaining party, within such period, of its desire to submit the controversy to arbitration in which event the matter shall be submitted for determination to and by the American Arbitration Association in the City and State of New York, pursuant to the rules thereof then prevailing. No award of the arbitration which terminates the license granted to RESEARCH hereunder shall be effective in the event that RESEARCH shall either have cured such substantial breach as designated in the aforesaid notice or shall have complied

with the award within sixty (60) days after rendering of said award."

■ While plaintiff argues that the Supreme Court decision staying arbitration is contrary to federal substantive law and public policy, it must be accepted as binding on the parties to this action, and this court has jurisdiction to rule on the termination of the license agreements.

■ Plaintiff's letter of November 17, 1967 was clearly not a notice of termination, and defendants' letter of November 28, 1967 "accepting" it did not convert it into one. Cutting through deficiencies of form, I rule that defendants' letter of November 28, 1967 was a notice of termination, in spite of its failure to give the sixty days notice provided in the agreement. It expressly listed the refusal to pay royalties as one of the grounds for termination. The present motion seems to recognize that plaintiff may reinstate the agreements, if they were terminated, by curing any defaults in royalty payments. The basic question now at issue is whether there was a valid reason for plaintiff to stop paying royalties.

### Other facts.

Each party has received money which the other claims, the plaintiff in the form of royalties from a sublicensee, and the defendants from a corporation which plaintiff asserts should have had a license from it. These claims do not affect the present motions.

Plaintiff claims that its investment of over $600,000 has been jeopardized by defendants' misconduct, and defendants claim that valuable business which they could obtain is being lost because of plaintiff's insistence that it is still a licensee. These factors justify a prompt hearing on the merits, especially since relief cannot be granted on the present motions at this time for the reasons set forth below.

## Legal effect of non-payment of royalties.

Defendants liken a patent license to a real estate lease, and assert that the licensee may not continue to operate under the license without paying royalties, because (they say) the law never permits a tenant to remain in possession of leased premises without payment of rent. There is substantial authority for defendants' view, mainly in cases holding that a licensee may not challenge the validity of the patent unless he repudiates the license and risks liability as an infringer. Skidmore v. Fahys Watch Case Co., 28 App.Div. 94, 101–103, 50 N.Y.S. 1016 (1st Dept. 1898); Universal Rim Co. v. Scott, 21 F.2d 346, 348 (N.D.Ohio 1922); Plastic Contact Lens Co. v. Guaranteed Contact Lenses, Inc., 283 F.Supp. 850 (S.D.N.Y.1968).

■ The rule is not as rigid as defendants construe it, for the licensee may defend a royalty claim if the patent has been held invalid in another suit, the the situation being then treated like an "eviction." See H. C. White Co. v. Morton E. Converse & Son Co., 20 F.2d 311, 313 (C.C.A.2d 1927, L. Hand, C. J.); White v. Lee, 14 F. 789 (C.C.Mass.1882). This case, therefore, presents the issue whether plaintiff has pleaded the equivalent of an eviction, and supported the pleading by the affidavits opposing the motion.

Some breaches by a licensor have been held not to constitute defenses to a suit for royalties. Wilcolator Co. v. Robertshaw Thermostat Co., 26 F.Supp. 255 (W.D.Pa.1939) (failure to prosecute infringers, and reduction of agreed prices). Even in a suit for rent, however, the tenant may defend if his landlord has failed to give him possession of part of the property, or has ousted him from possession. Two Rector Street Corp. v. Bein, 226 App.Div. 73, 234 N.Y.S. 409 (1st Dept. 1929); Fifth Avenue Estates, Inc. v. Scull, 42 Misc.2d 1052, 249 N.Y.S.2d 774 (App.T. 1st Dept. 1964).

The fact that a counterclaim is permissible in a suit for rent (Jelico Realty, Inc. v. F. J. Schilling Furniture Co., 252 App.Div. 817, 298 N.Y.S. 852 (3d Dept. 1937) is another indication that a licensee may have a defense against payment of royalties without renouncing the license. One of the cases relied on by defendants states that a licensee who claims a material breach may continue to use the invention and "offset its claim for damages against the plaintiff's claim for royalties." Specialties Development Corp. v. C-O-Two Fire Equipment Co., 109 F.Supp. 732 (D.N.J.1953).

■ A suit on a patent license may well be determined under the rules of general contract law, that a material failure of performance by one party may discharge the other party's duty to perform. Restatement, Contracts, §§ 274, 275.

## Plaintiff's defense to the claim for royalties.

In this case, the allegations in the complaint, while asserted affirmatively as a prayer for damages, may also be considered as a defense to the defendants' claim for payment of minimum royalties.

■ The complaint in this action asserts that defendants have infringed some of the very patents for which they claim royalties, and that they have frustrated plaintiff's efforts to exploit the licenses. The letter which began the dispute asserts also that defendants failed "to furnish the know-how which you were expressly required to furnish and which formed a substantial consideration for these licenses." The provisions in the agreements requiring defendants to supply documents and information to plaintiff have a close relationship with plaintiff's ability to exploit the licensed patents successfully.

The facts asserted by plaintiff could be classed as partial eviction, under the real property law analogy, or material failure of performance, under contract law principles.

If the allegations of the complaint are proved, and damages therefrom established, they would therefore constitute a proper offset to any liability for royalties.

 Plaintiff's affidavits on the pending motions, however, do not set forth specific facts sufficient to defeat a motion for summary judgment. F.R. Civ.P. 56(e). An explanation for this deficiency may be that plaintiff's taking of depositions had not been completed at the time the motions were brought, or that concentration on the legal issues presented by the moving papers prevented adequate consideration of the factual issues.

It seems appropriate to grant plaintiff fifteen days from the date of this opinion, in which time it may submit any evidentiary material which would support the claims it asserts. Until there has been a ruling on such material, it is unnecessary to determine whether plaintiff would have an obligation to pay royalties after an effective notice of termination by defendants.

### Interim relief.

Whatever the ultimate decision on the merits, the parties may be seriously hurt by having a final determination deferred. The interruption of negotiations with important prospective licensees, while the life of the patents continues to run out, may represent a permanent financial loss. Defendants assert also that some of their negotiations relate to inventions which are not within the scope of the license agreements and should not be affected by plaintiff's claims.

On appropriate papers, the court may determine whether either or both parties should be temporarily enjoined from interfering with particular negotiations, perhaps leaving the ultimate beneficiary of any royalties to await a full hearing. Under Rule 3(f) of the Calendar Rules of this court, the Chief Judge may determine that there are exceptional and meritorious reasons for a preference in the trial of a case. Either party may apply for such a preference.

Decision of the motion for partial summary judgment and the cross-motion is deferred pending receipt of supplemental affidavits from plaintiff.